IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BRADFORD C. SCOTT

            Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner
of Social Security

            Defendant.

No. 03:10-CV-58-HZ

OPINION & ORDER

Richard A. Sly
Attorney at Law
1001 SW 5th Avenue, Suite 310
Portland, OR 97204

Linda S. Ziskin
Ziskin Law Office
P.O. Box 2237

1 - OPINION & ORDER

Lake Oswego, OR 97035

       Attorneys for Plaintiff

Adrian L. Brown
U.S. Attorney's Office
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Gerald J. Hill
Stephanie R. Martz
Social Secuirty Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Bradford C. Scott brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on July 30, 2004, alleging an onset date of September 11, 2001. Tr. 110. His application was denied initially and on reconsideration. Tr. 73, 85. On August 22, 2007, plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 60. On November 5, 2007, the ALJ found plaintiff not disabled. Tr. 41-51. The Appeals Council denied review. Tr. 3-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having an L5 herniated disc. Tr. 194. At the time of the hearing, he was fifty-one years old. Tr. 110. He is a high school graduate and has past relevant work experience as a forklift operator. Tr. 179. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Commissioner, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

3 - OPINION & ORDER

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date through his date of last insured (DLI). Tr. 46. Next, at step two, the ALJ determined that plaintiff had a severe impairment of degenerative disc disease with right lower extremity radiculitis before his date of last insured. Id. As part of that determination, the ALJ considered the medical evidence, plaintiff's hearing testimony, and the testimony of plaintiff's wife. Id. At step three, the ALJ found that the impairments, singly or in combination, did not meet or equal the requirements of any listed impairment. Id. Next, the ALJ determined that plaintiff had a residual functional capacity (RFC) to stand and walk for six hours in an eight-hour day with breaks at least every two hours; sit between two to six hours with breaks every hour; lift and carry 25 to 50 pounds occasionally and 25 pounds frequently; and frequent postural limitations in bending and stooping. Id. At step four, the ALJ found that the plaintiff was able to

perform his past work as a forklift operator. Tr. 50. The ALJ concluded that the plaintiff was not disabled without reaching step five. Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

## DISCUSSION

Plaintiff contends that the ALJ erred in concluding the he was not disabled before March 31, 2006, his DLI. Specifically, he contends that the ALJ (1) failed to present a vocational hypothetical to the vocational expert (VE), (2) did not consider the use of medication in the RFC or the side effects of the medication, (3) did not take into account plaintiff's obesity, and (4) failed to adequately explain why plaintiff's impairments did not equal a listing at step three of the analysis.

5 - OPINION & ORDER

Plaintiff does not dispute that his DLI is March 31, 2006, Tr. 90, or that he has the burden of proving that he became disabled while he had "insured status." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). I address plaintiff's arguments in turn.

I.      Hypothetical for Vocational Expert

Plaintiff argues that the ALJ never presented a hypothetical to the VE and that the hypothetical must be read into the record. Pl.'s Br. 5. The ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001); Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence. Osenbrock, 240 F.3d at 1165. If the claimant fails to present evidence that he suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. Id. at 1164. If a VE's hypothetical does not reflect all of claimant's limitations, then his testimony has no evidentiary value to support finding that claimant can perform jobs in national economy. Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993); Embrey v. Bowen, 849 F.2d 418 (9th Cir. 1988).

Plaintiff's argument that the ALJ "never" presented a hypothetical is exaggerated. At the hearing, the ALJ did in fact present a hypothetical to the VE. Tr. 663. Although a hypothetical is typically presented verbally, the ALJ handed the VE an exhibit outlining Dr. Leslie Davidoff's functional assessment of plaintiff. Id. The ALJ then asked, "[t]aking a look at the limitations as described in that exhibit, first, consider a hypothetical claimant with these vocational limitations, would such an individual be able to perform any of Mr. Scott's prior work?" Tr. 664. After a

moment, the VE answered that plaintiff could work as a forklift operator. Id.

Plaintiff cites to McMichael, v. Astrue, in which the ALJ improperly handed a written assessment to the VE. No. 09-840, 2010 U.S. Dist. LEXIS 89038, at *11-12 (D. Or. Aug. 27, 2010). It is clear from the hearing transcript that the VE in McMichael was confused about the limitations to be considered and the meaning of some medical terms. Id. at *10. In contrast, the exhibit (Tr. 546-47) containing Dr. Davidoff's functional assessment of plaintiff's limitations is simple and clear. The VE did not interpret a medical exhibit, as plaintiff argues. In addition, a comparison between the ALJ's RFC (Tr. 46) and Dr. Davidoff's functional assessment (Tr. 546-47) shows no difference in describing plaintiff's ability to sit, stand, walk, lift, carry, bend or stoop. Unlike McMichael, there is no such confusion by the VE on the record. There is no merit to plaintiff's argument that the ALJ committed legal error by handing the written hypothetical to the VE.

II.     RFC and Side Effects of Prescribed Medication

Plaintiff argues that the ALJ failed to take into account plaintiff's use of medication in the RFC or the resulting side effects. Pl.'s Br. 8. At the hearing, the ALJ provided the VE with an RFC based on Dr. Davidoff's functional assessment. Tr. 546-47. In his findings, the ALJ gave significant weight to Dr. Davidoff's functional assessment and adopted those limitations to create plaintiff's RFC. Tr. 46. Dr. Davidoff had found that plaintiff could "lift and/or carry...25 pounds frequently if he had sufficient analgesia". Tr. 547. Plaintiff argues that the ALJ improperly omitted the phrase "if he had sufficient analgesia" from his findings. Pl.'s Br. 8. Plaintiff further argues that the opinion of Dr. Richard Alley, a non-examining physician, was not properly taken into account.

Plaintiff had visited a pain management clinic from September 2001 to October 2003. Plaintiff had relied almost exclusively on opioids (methadone) to treat his back pain–against the recommendation of the pain specialist who had suggested other forms of treatment.  Tr. 282. After being discharged from the clinic, plaintiff's physician, Dr. Mark Thompson, continued to prescribe methadone for the back pain (Tr. 247, 265, 267) and Celebrex (Tr. 240, 247, 250) and Lidoderm patches (Tr. 231) for back spasms.  In August 2004, plaintiff requested medical marijuana to help with his back pain.  Tr. 269.  Plaintiff complained that the methadone had stopped working, so he did not take it on a regular basis.  Tr. 265.  Plaintiff was noted as saying that the marijuana helps with his spasms, but not the chronic pain.  Tr. 249.  He reported that Celebrex blocked the spasms, which caused the worst of the pain.  Tr. 247.

In November 2006, Dr. Thompson noted that the combination of Celebrex and methadone was working well, and that plaintiff understood that he had to stop using marijuana to continue the current prescribed narcotic treatment.  Tr. 240.  However, in the next visit on April 2007, plaintiff reported that he had stopped taking methadone.  Tr. 230.  Dr. Thompson refused to prescribe medication other than ibuprofen because plaintiff refused a drug screening to ensure that he had stopped taking marijuana.  Tr. 228.  In July 2007, plaintiff's drug screen tested positive for marijuana and methadone.  Tr. 205.  At the hearing in August 2007, plaintiff testified that had been using Lidoderm with success to control the spasms.  Tr. 639.  He also explained that he had taken some "leftover" methadone (Tr. 645) and some hydrocodone that a friend had given him (Tr. 645).  Plaintiff admitted to taking un-prescribed medication and not following the doses as prescribed by the doctor.  Tr. 648-49.

Given this factual backdrop, the ALJ found that plaintiff was not entirely credible with

respect to the intensity, persistence and limiting effects of his impairment because of "evidence of symptom magnification and the failure to follow prescribed treatment." Tr. 48. To determine whether the plaintiff's testimony regarding the severity of his symptoms are credible, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment". Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

First, I return to the issue of whether the ALJ's RFC erroneously omitted the phrase "if he had sufficient analgesia" with respect to lifting and/or carrying 25 pounds frequently. In reviewing the record and the hearing transcript, it seems that the ALJ understood that plaintiff was in some pain, but not at the level as described by plaintiff. There is nothing in the record to suggest that the ALJ meant to disregard "sufficient analgesia" as part of plaintiff's RFC. Analgesics include aspirin and other non-narcotic pain killers that have no side-effects. In fact, the record shows that plaintiff's treating physician, Dr. Thompson, was prescribing ibuprofen to plaintiff, rather than methadone. Dr. Davidoff found that plaintiff was capable of medium level work, and the ALJ adopted that finding based on the substantial evidence in the record. I also trust that the VE understood and considered the basic term analgesic when presented with the hypothetical because there is no indication of confusion in the hearing transcript. Finally, the only reason the term "sufficient analgesia" is relevant to the ALJ's consideration is because of the assumption that analgesics would cause side effects that would prohibit plaintiff from operating a fork lift. As explained, this assumption is mistaken. *Narcotic* analgesics may cause side effects that might inhibit the ability to operate a forklift. However, the record does not support the assumption that narcotic analgesics were required for plaintiff to function. I do not find that the ALJ erred in this respect.

9 - OPINION & ORDER

Plaintiff also argues that Dr. Alley's opinion about plaintiff's limitations were not properly credited. Dr. Alley had recommended light exertion work and noted that plaintiff could not return to his prior work. Tr. 542. Dr. Alley noted that medium level work was inappropriate because of plaintiff's chronic pain and use of methadone. Id. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id. Also, when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, the ALJ noted that he gave Dr. Davidoff's opinion greater weight because she had examined plaintiff, unlike Dr. Alley. Tr. 50. Further, Dr. Davidoff included time and weight limitations for plaintiff to sit, stand, walk, lift, and carry, while Dr. Alley did not. Dr. Alley notably remarked that plaintiff was not seen as credible with respect to his physical limitations, but did not specify which limitations were exaggerated. Tr. 542. Given the conclusory nature of Dr. Alley's opinion and the ALJ's finding that plaintiff was not credible, the ALJ did not err by giving greater weight to Dr. Davidoff's opinion.

Finally, plaintiff argues that the ALJ failed to account for the side effects of plaintiff's use of methadone and marijuana, which would prevent him from returning to his past work as a forklift operator. Pl.'s Br. 9. The ALJ must consider all factors that might have significant impact on ability to work, including side effects of medications. Erickson v. Shalala, 9 F.3d 813 (9th Cir. 1993). I recognize that taking methadone or marijuana could produce side effects that

10 - OPINION & ORDER

would make operating a forklift impossible.  However, plaintiff assumes that only methadone and marijuana may be used to treat plaintiff's back pain.  This assumption is incorrect.  Dr. Davidoff does not require plaintiff to use *narcotic* analgesics.  As noted earlier, analgesics include aspirin, which has no side effects.  It is clear from the record, that plaintiff's treating physician, Dr. Thompson, stopped prescribing methadone.  Tr. 228.  Plaintiff testified generally that the "pain killers" made him drowsy.  Tr. 640, 642, 645.  However, this side effect is related to methadone, which is no longer prescribed to plaintiff.  With respect to the side effects of marijuana, nothing in the record supports that a physician determined that marijuana was necessary to treat plaintiff's back pain.  Moreover, plaintiff on his own, had chosen to stop taking the prescribed methadone in favor of marijuana–a drug of his choice.  Thus the record is absent as to any side effects from approved medication which would affect plaintiff's ability to work as a forklift operator.  As stated above, while there is evidence of plaintiff's need for analgesics, there is no evidence that plaintiff is limited to methadone and marijuana for his pain management.  Plaintiff's history of non-prescribed drug use and lack of credibility make it impossible to say anything more.  There is substantial evidence to support the ALJ's finding that plaintiff could return to work as a forklift operator.

III.     Consideration of Obesity

Plaintiff contends that the ALJ erred by not considering evidence of additional disorders, specifically his obesity.  In his application for benefits, plaintiff did not indicate obesity as an impairment.  Tr. 194.  The medical records include notations that plaintiff is "over-weight" or "mildly obese".  Tr. 266, 272.  However, the record does not include evidence that plaintiff's obesity was severe or that it exacerbated his impairment.  Thus, the ALJ did not err in failing to

account for the effects of a medical impairment (obesity) that plaintiff never raised before the ALJ. It is plaintiff's burden to show the presence of a medically determinable impairment. See Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (holding that claimant must submit sufficient evidence of impairment for a multiple impairment analysis to be required). I find that the ALJ did not err in this respect.

IV.     Explanation of Equivalence Analysis

Plaintiff argues that the ALJ did not adequately explain his analysis at step three, in which ALJ found that the impairments, singly or in combination, did not meet or equal the requirements of any listed impairment. At step two, the ALJ determined that plaintiff had a severe impairment of degenerative disc disease with right lower extremity radiculitis. Tr. 46. At step three, to meet or equal the listed impairment of degenerative disc disease, plaintiff must show evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.[1] 20 C.F.R. Part 404, Subpt. P,

---

[1]"Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, *degenerative disc disease*, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of *nerve root compression* characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. *Spinal arachnoiditis*, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. *Lumbar spinal stenosis* resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04 (emphasis added).

12 - OPINION & ORDER

App. 1, § 1.04. The ALJ found that no physician had opined that plaintiff's impairment of degenerative disc disease met or equaled a listing. Tr. 46. There is substantial evidence in the record to support this finding. Mere argument that plaintiff meets or equals a listed impairment will not suffice. Without more, I cannot say that the ALJ erred with respect to this issue.

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this  5th  day of July, 2011

/s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER